JOURNAL ENTRY AND OPINION
Defendant-appellant George Griffin (d.o.b. November 20, 1957) appeals from his jury trial conviction of seven counts of gross sexual imposition in violation of R.C. 2907.05(A)(4).[1] The female victim (hereinafter referred to as TG or victim), who was born in September of 1984, was under the age of thirteen at the time of the offenses which, pursuant to the amended indictment made at trial, occurred between September 25, 1992 through June 30, 1996. Appellant also appeals from his adjudication of being a habitual sexual offender in connection with this victim. For the reasons adduced below, we affirm in part, and reverse and remand in part.
A review of the record on appeal indicates that appellant was indicted on May 22, 2001. The original indictment identified the victim as Jane Doe, the date of offense for counts 1 through 10 as being from May 1, 1993 to September 24, 1993, and the date of offense for count 11 as being from September 25, 1993 to June 30, 1996.
The jury trial commenced on August 27, 2001. The state presented the testimony of five witnesses.
The first witness for the state was Cleveland Police Officer Lisa Woods, who testified that while on duty on January 25, 2001, she took a complaint from the victim's mother alleging inappropriate touching of the victim by appellant. In the course of taking the complaint, Officer Woods spoke with the victim with the mother present. The victim appeared hesitant and teary-eyed as she inculpated the appellant, who was a family friend. TG told the officer that appellant had touched her several times over a period of time in her private part, meaning her vagina, had touched her leg while riding in a car, and had told the victim that she was sexy. Tr. 15-17. The victim stated that these events happened when she was between 9 and 13 years of age, which would necessarily place the approximate dates of the offenses between 1993 and 1997. Tr. 19. The mother of the victim had originally reported this complaint to East Cleveland police, who instructed her to file the complaint with the Cleveland police. The victim's mother also indicated to the officer that the victim was undergoing counseling and had attempted suicide. Tr. 20-21. Pursuant to established policy, the officer forwarded this report to the police department's sex crimes unit for further investigation.
The second witness for the state was Beth Larsen, Ph.D., a psychology intern at Applewood Centers (a community mental health facility specializing in treating children and adolescents with psychiatric diagnoses, and their families) who is a family therapist who also does some group therapy and psychological assessments for children and adolescents. Her education includes the following: bachelor's degree in psychology and child development; master's degree in early childhood development; doctorate degree in counseling and school psychology. Tr. 24. Her education and experience also includes treating juveniles who have been sexually molested.
Dr. Larsen was TG's individual and family therapist at Applewood beginning in September of 2000. TG was referred to Applewood by the Cleveland Clinic who had treated TG following a suicide attempt and had diagnosed her as suffering from major depression with psychotic features. Tr. 28-29.
During therapy with Dr. Larsen the then-sixteen year old victim recounted that her suicidal tendencies began when she was between 8 and 9 years of age. Tr. 31. The victim's suicidal acts[2], including self-mutilation (cutting herself with knives, Tr. 49) and depression, corresponded with instances of being touched by someone that her family knew. Tr. 32, 34. Approximately two months into the therapy sessions the victim identified appellant as her molester. Tr. 33. On cross-examination, Dr. Larsen stated that the victim identified appellant as the molester sometime in mid to late January of 2001, or approximately 3/ to 4 months into therapy. Tr. 43.
The victim told Dr. Larsen that appellant had touched her private parts, which included going under her clothing. Tr. 39. The victim left the individual care of Dr. Larsen in February of 2001 when the victim entered a group therapy program.
It was Dr. Larsen's opinion that where there is self-mutilation there is often also sexual abuse. Tr. 49. At the time of seeing Dr. Larsen, the victim was under psychotic medications prescribed by a psychiatrist. Tr. 56-57.
The second witness for the state was the mother (hereinafter referred to as MOV) of the victim, who was her only child.
MOV recounted that in the past the victim had been a normal, happy, outgoing and intelligent child, but now is unhappy and withdrawn, having no friends and interacting only with MOV. Tr. 66-67. The first signs of the victim's depression were seen in 1998 when MOV found the victim trying to hang herself in a clothes closet. This was the victim's first suicide attempt. At the time of this first suicide attempt, MOV learned that the victim, who had been taking Prozac to moderate depression, had stopped taking the Prozac. Tr. 67-68.
MOV also testified that she had met the appellant sometime in 1979-1980, when appellant had dated MOV's sister. Appellant was a close family friend, considered part of the family and MOV's best friend, and was like a father to the victim. Tr. 68-69, 70, 92-94.
Between 1993 to 1996, MOV and the victim lived with MOV's mother. Appellant never lived with MOV but visited often, perhaps several times per week. Tr. 69-70. Appellant would assist family members by providing rides for errands and appointments, help fix up the home, and pick the victim up from elementary school in his car despite the fact that the victim usually walked to and from school and the school being approximately a ten-minute walk from the victim's home. Tr. 71. Picking the victim up at school occurred three or four times per week, sometime between the victim's fourth or fifth grade of elementary school, despite the victim walking to school and being unaware that appellant would be waiting to bring her home. Tr. 96. Appellant even attended two or three of the victim's therapy sessions with Dr. Lesen.
In January of 2001, the victim attempted suicide with a knife at her home. Tr. 74. The victim's mental health case manager at the time, Bernice Thomas, was allowed by the victim into the victim's room where she found the victim. The victim expressed a desire not to live. Ms. Thomas then dressed the victim and transported her to the emergency room at the Cleveland Clinic. When MOV arrived home that day she found a voice mail message by Ms. Thomas asking her to come to the Cleveland Clinic.
At the Cleveland Clinic, the victim told MOV that appellant had been feeling her private parts. Tr. 76. The victim then told MOV that these untoward acts were first committed on her eighth birthday (which was in September of 1992), at which time appellant put his hands between her legs while the car they were in was proceeding through the drive-thru lane at a local Burger King restaurant. Id.; Tr. 107-108. The victim also told MOV of an episode which occurred when the victim was sleeping in the attic area of the grandmother's home, at which time appellant came up to her bed, pulled back the covers, placed his hands under her pajamas and touched her vagina with his fingers. Id.
MOV next testified that in 1997 she had asked the victim whether someone had been touching her inappropriately. This questioning was prompted [B]ecause the incident came up with another family member of mine. Tr. 77. In response to this 1997 questioning, the victim told MOV of an episode where appellant had picked the victim up by her waist and was swinging the victim in the grandmother's driveway. At that time, appellant allegedly had one hand on the victim's waist and one hand on her skirt between her legs. Tr. 78, 97. When MOV confronted appellant with this driveway allegation, appellant denied improperly touching the victim, but did say that he put his hand on her skirt to prevent it from blowing up while he was spinning her around. Id. At that time, MOV was satisfied with appellant's explanation and did nothing further, despite seeing signs of change in the victim. These adverse signs culminated in the 1998 suicide attempt.
Approximately two weeks after the January 2001 revelations at the Cleveland Clinic[3], MOV contacted the East Cleveland police because the first incident of molestation happened in East Cleveland. East Cleveland police then advised her to also file a complaint in Cleveland because certain incidents happened in Cleveland. MOV complied and file the complaint with the Cleveland police on January 25, 2001. Thereafter, she was contacted by Cleveland Police Detective Strickler who had been assigned to investigate the complaint.
On cross-examination, MOV testified that the victim first began taking Prozac for depression in 1998, first attempted suicide in 1998, and would get depressed when she stopped taking her medication. Tr. 83-84, 115-116. Between 1999 and 2000, the victim attempted suicide by taking an overdose of pills at school (Tylenol and Advil). In 2000 the victim cut her wrists a number of times on one occasion with a knife while at home by herself. Tr. 88.
MOV has had no contact with appellant since the revelation made at the Cleveland Clinic on January 12, 2001. Tr. 111.
At some point, the victim was angry at the appellant because he made disparaging comments over her choice of music and the way she spoke in proper English. The victim liked rock-and-roll and did not care for rap music, and appellant allegedly criticized her for trying to be white. Tr. 117-118. When confronted with the victim's displeasure over these remarks, appellant stopped making them. Tr. 118.
The victim was also depressed, in part, by the fact that she spent an inordinate amount of time, in her view, helping her grandmother care for her cousins who were in the grandmother's custody at the time of her first suicide attempt in 1998. Tr. 119-120. The victim also was depressed because her high school (Glenville) in 1998 was far from home and the class sizes were too large. Tr. 120. However, the victim was also depressed because of the appellant touching her. Tr. 122.
On redirect examination, MOV identified a particular niece by name as being the other family member who had accused appellant of improper touching. Tr. 123. Also on redirect, MOV stated that appellant had contact with the victim from the time she was 8 years old to about the time she was 12 years old. Tr. 124. There was no recross-examination by the defense.
The fourth witness for the state was Cleveland Police Detective Alan Strickler, who stated that as a member of the sex crimes unit he was assigned on January 30, 2001 to investigate the MOV's complaint concerning appellant. As part of this investigation he interviewed separately the MOV and the victim. The detective also spoke with Ms. Thomas and Dr. Lesen.
According to the detective, the victim stated that the final episode of touching took place in late 1995 or early 1996, when it was wintertime, in the attic incident discussed previously, wherein appellant rubbed the victim's vagina with his fingers. Tr. 136-137. This offense was charged in count 11 herein. Tr. 137.
On cross-examination the detective testified that he did not have the appellant arrested, but the matter was referred to the grand jury by the prosecutor. The detective also contacted the appellant as part of his investigation. When contacted by telephone, appellant chose not to make a statement because he wanted his attorney present. Tr. 149. The appellant then told the detective that he would come in to make a statement at a later time. Subsequent to that telephone call the appellant came down to the detective's office without counsel and again chose not to make a statement. Tr. 150. The detective told appellant that he could return at a later time with counsel to make a statement. Id.
The fifth, and final, witness for the state was the victim, TG. Tr. 154-250.
The victim generally corroborated the testimony of the other witnesses concerning her involvement in these offenses and the resulting investigation by the police.
In particular, the victim stated that she first started taking psychotropic medication in 1998 when she was hospitalized in September of that year for an attempted suicide by hanging. Tr. 158.
She then stated that appellant first touched her on her eighth birthday (in September of 1992) while they were going through the drive-thru at a local Burger King restaurant. Tr. 159-160. According to the victim, appellant touched her leg and then vagina with his right hand outside her clothing, moving his hand in a circular fashion as he rubbed her vagina, and that the entire incident lasted for approximately five minutes. Tr. 161-162.
She then described the second touching incident involving the appellant when he was taking the victim, who was ill, home from a friend's house in Cleveland Heights, Ohio. During this incident, appellant rubbed her vagina through her clothing while they were in appellant's car. Tr. 162-164.[4]
The victim next recounted a third incident involving the appellant. In this incident, appellant was taking the victim to a movie theater sometime in 1993 when he reached over in the car and, through her clothing, touched her vagina. Tr. 164, 199.
The fourth incident alleged by the victim was the summertime spinning incident at her grandmother's house, which occurred in 1993. Tr. 165-166. The victim stated that this spinning-type conduct, accompanied by similar inappropriate touching by appellant, happened at least ten times during the summer of 1993. Tr. 167-168, 201.
The next incident with appellant occurred between 1994 to 1996 when appellant would periodically pick her up from school. She remembered the appellant stopping his car as she was walking home from school, her getting in, and then the appellant forcing her legs open and touching her vagina over her clothing. Tr. 169-172. During this incident appellant, while taking her home from school in his car, also touched her calf and told her that she was sexy. Id. The victim stated that this type of after school behavior in his car happened three or four times. Tr. 172.
The victim then testified about the 1996 incident in the attic bedroom in her grandmother's home when the appellant pulled back her bed covers and, over a period of approximately twenty minutes, rubbed her vagina with his fingers underneath her clothing. Tr. 173-174.
In another incident, appellant was driving the victim's sick aunt home from the hospital. With the aunt asleep in the back seat and the victim in the front passenger seat, appellant touched the victim's vagina through her clothing. Tr. 174-175.
Between August to September of 1997, the victim remembered her mother asking her whether appellant had ever touched her. Tr. 176. The victim told her mother, yes. Id. There were no touchings by appellant after that. Tr. 177. The victim was in seventh grade at that time. Id.
The victim stated that she was depressed prior to her 1998 suicide attempt because she felt that she was being taken advantage of by a close family friend. Tr. 177.
The victim then corroborated her experiences with her therapists and her divulging the molestation to them. She also corroborated her mother's actions in notifying the police following the 2001 report of molestation to the therapists.
On cross-examination the victim admitted that she has been on six different medications and that her depression subsides when she's faithful to her medication regimen. Tr. 192-193. The victim was unsure whether the molestation began in 1993, but was adamant that the molestation started when she was eight years old on her birthday. Tr. 196.
Further on cross-examination, the victim testified that she never told Dr. Lesen by name that it was appellant who had molested her, just that someone had molested her. Tr. 233, 249. Instead, the victim told Ms. Thomas in January of 2001 that it was appellant who was molesting her. Tr. 236, 237.
After the examination of the victim had concluded, the state made a motion to amend the indictments to reflect the date of the offense being from, on or about, September 25, 1992 to June 30, 1996, and the proper name of the victim. Tr. 251-252. The defense counsel objected to this proposed amendment on the sole basis that,
 * * * she made a statement to the detective prior to the case being initiated that this started on her eighth birthday and to the summers in which it allegedly occurred; however, the indictment reads from May of `93 until September of `93, and now after testimony has been presented, it's inconsistent with the dates of the indictment and now the motion is being made to change the dates of the indictment to fit the testimony. Tr. 252-253.
The trial court granted the amendment of the indictment. Tr. 253.
The state then rested its case-in-chief and the defense made a motion for acquittal pursuant to Crim.R. 29 on the sole basis that the prosecution had failed to demonstrate each and every element of the offenses as charged in the indictment. Tr. 253-254. The court denied the motion for acquittal. Tr. 254.
The defense then rested without presenting any evidence in its case-in-chief. Tr. 254. The parties then proceeded to closing arguments. Tr. 255-287.
The court then instructed the jury as to the law to be applied during its deliberations. Tr. 287-305. Counsel for the parties each stated affirmatively on the record that they had no questions with regard to the jury instructions. Tr. 305. The matter was then placed into the hands of the jury. Id.
The jury returned a guilty verdict on counts 1 through 7, inclusive, and not guilty on counts 8 through 11, inclusive. Tr. 306-307. When asked, the defense waived having the jury polled. Tr. 307. The appellant was then referred to the probation department for the preparation of a presentence investigation report.
On October 12, 2001, appellant appeared for sentencing. Prior to beginning the sentencing hearing, the court proceeded to have a sexual predator determination. Counsel for the parties each gave their arguments with respect to this determination. Tr. 313-328. After hearing the arguments of counsel, the court adjudicated appellant to be a habitual sexual offender. Tr. 328.
The court then proceeded to the matter of sentencing on the offenses for which appellant was convicted. During this proceeding the MOV made a statement to the court. Tr. 329-331. Next, the court heard from defense counsel. Tr. 331-333. Defense counsel read into the record a letter authored by the mother of appellant's 21-year-old daughter. Tr. 332-333. On behalf of the defense, appellant's fiance made an oral statement to the court. Tr. 333-334. Finally, appellant made a statement to the court, admitting responsibility for his actions, apologizing for his behavior, and professing to have changed his life through successful alcohol and drug treatment. Tr. 334-335. At that time appellant was sentenced to serve eighteen months on each of the seven counts, concurrent with one another, and probation was terminated with his prior case, Cuyahoga County Common Pleas Court, General Division, Case No. CR-348597. Tr. 336-337.
Appellant presents twelve assignments of error on appeal.
The first assignment of error argues that the trial court erred in amending at trial the range of dates (to-wit, on or about, September 25, 1992 to June 30, 1996) for the gross sexual imposition offenses in the indictment.
Crim.R. 7(D) governs the amendment of indictments. It provides:
 `The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impanelled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later date with the same or another jury. * * *'
Crim.R. 7(D) embodies the protections guaranteed by Section 10, ArticleI, of the Ohio Constitution, which: `guarantees the accused that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury. Where one of the vital elements identifying the crime is omitted from the indictment, it is defective and cannot be cured by the court as such a procedure would permit the court to convict the accused on a charge essentially different from that found by the grand jury.' State v. Strozier (Oct. 5, 1994), 1994 Ohio App. LEXIS 4656 at *5, Montgomery App. No. 14021, quoting State v. Headley (1983), 6 Ohio St.3d 475, 478-79, 6 Ohio B. 526, 453 N.E.2d 716.
An amendment that changes the name or identity of the offense charged constitutes reversible error, regardless of whether the defendant can show prejudice. See Id. For amendments that do not change the name or identity of the offense charged, the defendant is entitled to a continuance `unless it clearly appears from the whole of the proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made.' Id, quoting Crim.R. 7(D). State v. Honeycutt, Montgomery App. No. 19004, 2002-Ohio-3490 at ¶ 12-15.
In the present case, the amendment did not change the name or identity of the crimes charged. Appellant was charged with gross sexual imposition, and the amendment of the indictment did not change that fact.
However, the amendment did change the range of dates for these offenses. Appellant cites State v. Vitale (1994), 96 Ohio App.3d 695,645 N.E.2d 1277, for the proposition that the change in the date range for the offenses changed the identity of the crimes. In Vitale, the court determined that the amendment of the date range was a change to the identity of the crimes because the indictment was changed to reflect completely different crimes that occurred at different times and different places. See Id. at 700-701.
The present case is distinguishable from Vitale in one important respect. Appellant herein was charged with a pattern of conduct. The amendment of the date range did not change the fact that appellant was charged with a pattern of conduct over a range of time. Nor did the amendment add separate crimes to the indictment for which appellant had not been charged. The evidence at trial, particulary the victim's testimony, provided at least seven instances of conduct of spinning in the summer of 1993 which could constitute gross sexual imposition in themselves during the original indictment date range. Furthermore, appellant has not demonstrated that his defense was prejudiced by the amendment of the indictment. See State v. Murrell (1991),72 Ohio App.3d 668. 595 N.E.2d 982.
The first assignment of error is overruled.
The second assignment of error argues that the court committed plain error when it failed to instruct the jury that it must be unanimous in its determination of guilt on the seven separate counts for which he was convicted. See appellant's brief at 22. Appellant argues that the individual counts offered no specificity as to which of the * * * instances of alleged sexual contact constituted which charge, Id. at 23, and that, [W]ithout further instruction that it needed to be in unanimous agreement as to what constituted the particular instance of sexual contact that constituted the gross sexual imposition for which Mr. Griffin was being convicted on any given count, the jury may well have returned a less-than-unanimous verdict. Id. at 24.
In reviewing an assignment premised on plain error pursuant to Crim.R. 52(B), we note the following:
 Plain error does not exist unless the outcome of the trial would clearly have been different. State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. Id. at paragraph three of the syllabus. (Italicization added.) State v. Hudson, Cuyahoga App. No. 79010, 2002-Ohio-1408 at ¶ 10.
In the present case, the record indicates that the trial court instructed the jury that it had to be in unanimous agreement in order to reach a verdict: Because this is a criminal case, the law requires that all 12 of you be in agreement before you can consider that you have reached a verdict. Tr. 299. The court then stated that each count was a separate and distinct matter and you must consider each count separately. Id. Then, the court instructed the jury that it had to find beyond a reasonable doubt, with regard to the eleven counts, that on or about September 25, 1992 through June 30, 1996, that appellant had sexual contact with the victim who was not his spouse and was under the age of thirteen at the time of the offenses. Id. at 299-300. Given these instructions, and the evidence supporting at least seven instances of sexual contact with the victim, we cannot conclude that the outcome of the trial would clearly have been different.
The second assignment of error is overruled.
The third assignment of error argues that the trial court committed plain error when it admitted other acts evidence in violation of Evid.R. 404(B) and R.C. 2945.59. The other acts evidence complained of involves the appellant's molestation of the victim's juvenile female cousin.
The first instance of testimony relating to this other act evidence occurred during the direct examination of the MOV, during which she related questioning her daughter in 1997 concerning being touched improperly:
 Q. Let me ask you, how was it that you came — did she tell you in 1997? Was it a question that you posed to her?
 A. Oh no. The incident that happened with my — with a niece of mine.
 Q. Did you ask her in 1997 if somebody had been touching her?
A. Yes.
 Q. And what was the reason that you were asking her back in 1997?
 A. Because the incident came up with another family member of mine. Tr. 77.
There was no objection to this line of questioning at the time.
Later, during the redirect examination of the MOV, she was again questioned, without objection, about her 1997 interrogation of the victim concerning being touched by appellant and MOV's motivation for inquiring of the victim:
 Q. And did you ask her anything or did she just tell you about George? Was it an answer to your question that you posed to her?
A. I asked her.
Q. And why was it that you asked her?
 A. Because it was an incident that happened in my family with George.
Q. With who?
A. With my niece A-----.
 Q. And were there allegations that something happened with A-----?
A. Yes. Tr. 123.[5]
The second instance of testimony relating to this other act evidence occurred during the direct examination of the victim during which the victim related a 1997 questioning by her mother:
 A. * * * I remember my mother coming into the house and I was in the kitchen. And she asked me, have anyone ever touched you. Have George ever touched you and I told her yes.
 Q. If you know, why would she be asking you that at that particular time?
 A. Because someone in my family was being sexually abused by him.
MRS. O'BANNON: Objection.
THE COURT: Sustained.
Q. What did you —
 THE COURT: Ladies and gentlemen, disregard that. Tr. 175-176.
In reviewing this assignment we are guided by the plain error standard enunciated in State v. Hudson, supra, and by the following:
 Evidence of other acts is prohibited if it is offered to prove the character of a person in order to show that the person acted in conformity with those other acts. See Evid.R. 404(A). Other acts evidence may be admissible, however, to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. See Evid.R. 404(B). It has been said that Evid.R. 404(b) is a rule of inclusion, not exclusion. United States v. Long (C.A.3, 1978), 574 F.2d 761, 766, certiorari denied (1978), 439 U.S. 985 (referencing identical federal rule). Admission of the other acts evidence should be allowed except where such evidence tends to prove only criminal disposition. See United States v. DeSalvo (C.A.9, 1994), 41 F.3d 505, 509. In order to be admissible, the other acts used must not be too remote in time, and must be closely related in nature, time, and place to the offense charged. State v. Henderson (1991), 76 Ohio App.3d 290, 294, 601 N.E.2d 596. As with other decisions relating to the admission of evidence, we review the court's decision to permit other acts evidence for an abuse of discretion. State v. Green (2000), 90 Ohio St.3d 352, 369, 738 N.E.2d 1208. State v. Sawyer, Cuyahoga App. No. 79197, 2002-Ohio-1095 at ¶ 48.
The brief references to allegations concerning appellant's involvement with the victim's cousin, without further development to demonstrate a proper use permitted by Evid.R. 404(B), was used to show nothing more than appellant's criminal propensity. Accordingly, the court properly struck this evidence when it was objected to by the defense during the examination of the victim. Where no objection was raised at trial with regard to this evidence, plain error is not demonstrated because we cannot conclude that but for this error the result of the trial would have clearly been different given the remaining evidence of guilt.
The third assignment of error is overruled.
The fourth assignment of error argues that the trial court committed plain error when it admitted the victim's hearsay statements concerning appellant's actions, statements she made to her family members, therapists, and Officer Rimas[6] and which were testified to at trial by those three groups of witnesses. Appellant's brief at 28.
Out-of-court statements made by the victim to her psychological therapist, Dr. Lesen, are admissible pursuant to Evid.R. 803(4) as statements for purposes of medical diagnosis or treatment.
Out-of-court statements made by the victim to her mother and the police, while hearsay, constitute harmless error in light of the fact that the victim testified to the same matters which were the subject of the out-of-court statements she made to the MOV and police. Crim.R. 52(A). Furthermore, plain error is not demonstrated because, by virtue of the victim's testimony which substantially mirrored her out-of-court statements recounted by the other witnesses, the outcome of the trial would not have clearly been different but for the alleged error. Crim.R. 52(B).
The fourth assignment of error is overruled.
The fifth assignment of error argues that the trial court committed plain error when it instructed the jury to the effect that Mr. Griffin could be convicted of gross sexual imposition even if he did not specifically intend to be sexually gratified or aroused. Appellant's brief at 29.
The court instructed the jury on the necessary element of intent, thusly:
 Sexual contact means any touching of an erogenous zone of another including, without limitation, the thigh, genitals, buttock, pubic region, or if such person is a female, a breast, for the purpose of sexually arousing or gratifying either person.
 * * *
Purposely. Having sexual contact for the purpose of sexually arousing or gratifying either person is an essential element of the crime of gross sexual imposition.
Purpose is a decision of the mind to do an act with a conscious objective of engaging in a specific conduct. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself unless he expresses it to others or indicates it by his conduct. Tr. 300-301.
Appellant argues that the third paragraph in the preceding passage undid the instruction on purpose contained in the second paragraph. We do not agree with this interpretation. The instruction employed by the court, when taken as a whole, adequately instructed the jury that for purposes of guilt they had to find that appellant had sexual contact with the victim for the purpose of sexually arousing or gratifying either person and that such purpose had to be intentional, not accidental. We see no error herein, plain or otherwise, with respect to this instruction which would cause the jury to have been confused as to what they had to find regarding Mr. Griffin's specific intent. Appellant's brief at 30.
The fifth assignment of error is overruled.
The sixth assignment of error argues that the failure to include all of the written jury instructions in the record deprived appellant of his right to due process by impairing his right to an effective first appeal. Appellant's brief at 31.
While the written general instructions are not in the record, appellant concedes that the written special instructions are in the record. Id.
R.C. 2945.10(G) mandates that following closing arguments, and before proceeding with other business, the trial court shall forthwith charge the jury. Section (G) then immediately states the following:
 Such charge shall be reduced to writing by the court if either party requests it before the argument to the jury is commenced. Such charge, or other charge or instruction provided for in this section, when so written and given, shall not be orally qualified, modified, or explained to the jury by the court. Written charges and instructions shall be taken by the jury in their retirement and returned with their verdict into court and remain on file with the papers of the case. (Italicization added.)
The record does not indicate that either party requested, prior to the commencement of closing arguments, that the general instructions be reduced to writing. Even if it were requested and reduced to writing, appellant fails to demonstrate any prejudice resulting from the failure of the trial court to preserve in the record the written general instructions. Absent a demonstration of prejudice in failing to preserve the written instructions, error therein is not subject to reversal. State v. Hardy (Feb. 17, 2000), Cuyahoga App. No. 75778; State v. Hudson, supra.
The sixth assignment of error is overruled.
The seventh assignment of error argues that the verdicts are against the manifest weight of the evidence. In analyzing this assignment we are guided by the following standard:
 A manifest weight of the evidence argument involves determining whether there exists a greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. Weight is not a matter of mathematics, but depends on its effect in inducing belief. Id.
When reviewing a claim that the judgment in a criminal case is against the manifest weight of the evidence, this court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, supra, citing State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717. In re Idom, Cuyahoga App. No. 79639, 2002-Ohio-3632 at ¶ 16-17.
After reviewing the record we conclude that the convictions were supported by the manifest weight of the evidence.
The seventh assignment of error is overruled.
The eighth assignment of error argues that appellant was denied the effective assistance of trial counsel in failing to object to hearsay evidence (see assignment of error four), allegedly improper jury instructions (see assignment of error five), and the prosecutor's statement, made at the start of the brief rebuttal closing argument, in which the prosecutor stated that, [I]t seems to me that counsel is genuinely disappointed that (the victim) isn't dead. Tr. 286.
The standard of review for a claim based on ineffective assistance of counsel was recently stated in State v. Otte, 94 Ohio St.3d 167,2002-Ohio-343, 761 N.E.2d 34:
 Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, sets forth a two-part test for judging ineffective-assistance claims: `When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.' Id. at 687-688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Furthermore, `the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Id. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. See, also, State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus.
As for the claim of ineffective assistance of counsel with respect to matters raised in assignments four and five, supra, the claim is without merit in light of our determinations for these assignments.
As for the claim of ineffective assistance of counsel in failing to object to the prosecutor's statement made during rebuttal closing argument, appellant argues that this statement improperly injected the prosecutor's personal opinion into the case and also attacked the integrity of defense counsel. We find this statement by the prosecutor to be a fair comment based on the defense tactic of trying to minimize the seriousness of victim's suicidal tendencies during testimony and then, during closing argument by the defense, stating to the jury, [S]he had attempted suicide over these years, and don't get me wrong, but that has never been successful. So, to make you think how serious was she on these suicide attempts? Tr. 268. Further, in no way can it reasonably be argued that the prosecutor's comment was an attack on the integrity of defense counsel. Even if the prosecutor's comment was somewhat improper, it still is not sufficient to demonstrate that the result of the trial would have been different but for the comment.
The eighth assignment of error is overruled.
The ninth assignment of error argues that the trial court improperly considered at sentencing other acts of Mr. Griffin for which he had already been punished and for which he had successfully been completing his probation. Appellant's brief at 34.
The other acts mentioned by appellant is his guilty plea conviction and sentence in his prior case involving the attempted gross sexual imposition of the cousin of the present victim, A----.
During the sentencing, appellant apologized to both of the victims and took full responsibility for his actions in each of the cases. Tr. 334-335. The court then noted that the offenses sub judice happened prior to appellant's guilty plea in the other case. Appellant admitted that had the state and judge in that other case known of the offenses sub judice, that appellant would not have received the plea bargain in that other case. Tr. 336. The court agreed with appellant's assessment of his plea bargain in that other case and then stated, [A]nd I told your lawyer I was going to give you a year, but I'm going to give you a year and a half, because we have two victims here, and this is old law. I'll run them concurrent on all counts. Tr. 336.
As felonies of the third degree under the pre-Senate Bill 2 version of R.C. 2907.05(A)(4), the court could impose a term of imprisonment of either one, one and one-half, or two years. See pre-Senate Bill 2 version of R.C. 2929.11(D)(1). The sentence imposed is within the available penalty range. Furthermore, when determining the term to be imposed for a third or fourth degree felony, the court was required to take into consideration the offender's history of criminal activity. See pre-Senate Bill 2 version of R.C. 2929.13(A)(5). The comment by the trial court, we have two victims here, can be interpreted as simply a recognition by the court of the criminal history of the appellant.
The ninth assignment of error is overruled.
The tenth assignment of error argues that R.C. 2950.09(C)(2)(b)(ii) is unconstitutional due to vagueness. This argument is without merit since the Ohio Supreme Court has determined that R.C. 2950 is not unconstitutionally vague. See State v. Williams, 88 Ohio St.3d 513,2000-Ohio-428, 728 N.E.2d 342, cert. denied in (2000), 531 U.S. 902,121 S.Ct. 241, 148 L.Ed.2d 173; see, also, State v. Sanders (May 15, 2000), Clermont App. No. CA99-07-069 (held that R.C. 2950.09[C][2][b][ii] is not unconstitutional due to vagueness).
The tenth assignment of error is overruled.
The eleventh assignment of error argues that the trial court erred in not taking testimony at the sexual predator hearing in support of Mr. Griffin's position that he was not sexually dangerous. Appellant's brief at 36.
The twelfth assignment of error argues that the trial court erred by not making findings in support of its adjudication of Mr. Griffin as an habitual sexual offender * * *. Appellant's brief at 36.
In reviewing the sexual predator hearing transcript and the journal entry relating to appellant's adjudication as a habitual sexual offender, we note that the trial court did not discuss on the record its the evidence and factors it considered in making that adjudication. The court, after hearing the arguments of counsel, merely stated that it was finding appellant to be a habitual sexual offender and then proceeded to the sentencing hearing. Tr. 328. The journal entry of October 17, 2001 detailing the adjudication is no better. It simply states that, [T]he court considered all of the required factors of the law and [T]he court finds defendant to be a habitual sexual offender.
The failure of the trial court to discuss on the record the evidence and factors it used in arriving at the determination that appellant was a habitual sexual offender, a failure which is conceded by the appellee, see appellee's brief at 21, mandates a reversal of that adjudication and a remand for a new sexual predator hearing. See State v. Eppinger (2001), 91 Ohio St.3d 158, 2001-Ohio-247, 743 N.E.2d 881; State v. Thompson (2001), 92 Ohio St.3d 584, 2001-Ohio-1288, 752 N.E.2d 276; State v. McCuller, Cuyahoga App. No. 79870, 2002-Ohio-2254. R.C. 2950.09(B)(2).
The twelfth assignment of error is affirmed. The eleventh assignment of error, by virtue of the twelfth assignment determination, is rendered moot and need not be discussed. See App.R. 12(A)(1)(c).
In summary, the underlying convictions herein are affirmed, and the sexual predator adjudication reversed and remanded for a new hearing with advance notice to be provided the offender.
Judgment affirmed in part, and reversed and remanded in part.
This cause is affirmed in part and reversed and remanded in part.
The court finds there were reasonable grounds for this appeal. It is, therefore, considered that said appellant(s) and appellee(s) each pay one-half of the costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
ANN DYKE, J., and TERRENCE O'DONNELL, J., CONCUR.
[1] Appellant was acquitted by the jury on four counts of gross sexual imposition involving the victim.
[2] Dr. Larsen recalled that two of the victim's suicide attempts included an attempted overdose and an attempted hanging. Tr. 41.
[3] The victim was released from the Cleveland Clinic on January 17, 2001. Tr. 80.
[4] The victim testified on cross-examination that this second incident occurred when she was between seven and eight years of age. Tr. 198.
[5] The niece's name has been altered so as to protect her privacy.
[6] While appellant mentions statements made by the victim to Officer Rimas, no witness by that name appeared at trial.